### Roland GUILLORY
### v.
### HUMBLE OIL & REFINING COMPANY.
#### Civ. A. No. 68–7.

United States District Court,
E. D. Louisiana,
Baton Rouge Division.
March 13, 1970.

Roy Maughan, Baton Rouge, La., for plaintiff.

A. R. Christovich, Jr., Christovich & Kearney, New Orleans, La., for defendant.

WEST, Chief Judge.

This is a suit for personal injuries allegedly sustained by the plaintiff, Roland Guillory, while working on a fixed offshore drilling platform located on the Outer Continental Shelf more than one marine league out from the Louisiana shore. The injury complained of was allegedly sustained on December 18, 1965. This suit against Humble Oil & Refining Company, the owner of the platform, was not brought until January 15, 1968, some twenty-five months after the alleged accident.

The defendant filed a motion to dismiss on the ground that the one year prescriptive period (statute of limitations) provided for by Louisiana law is applicable to this case, and hence the suit was not timely filed. In opposition to this motion, the plaintiff asserts that the timeliness of the filing of the suit must be determined not by the Louisiana law of prescription, but instead by the federal maritime doctrine of laches.

This Court concludes that the case of Rodrigue v. Aetna Casualty and Surety Company, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), is dispositive of that issue, and that under the doctrine of that case, the Louisiana law of prescription is applicable here. Hence, since more than one year elapsed between the time of the accident and the filing of this suit, plaintiff's suit must be dismissed as having been untimely filed.

Prior to the Supreme Court decision in the *Rodrigue* case, the holding in Pure Oil v. Snipes, 293 F.2d 60 (CA 5–1961), was generally held to be controlling in cases of this kind. In *Snipes,* the Court simply held that in its opinion, federal maritime law was, in fact, applicable to accidents occurring on fixed platforms located on the Outer Continental Shelf, and that hence the law of the adjacent state was not applicable. The Court, in *Snipes,* recognized, of course, the fact that the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1333(a) (2), provided that where there was an absence of applicable federal law, the law of the adjacent state would be applied as federal law. It simply concluded, for reasons therein set forth, that federal maritime law was, in fact, applicable federal law, thus making it unnecessary to adopt as federal law the law of the adjoining state. *Snipes* has therefore been the controlling law on this subject since its decision in 1961. The *Rodrigue* case was originally filed in this Court, and it was actually filed as three separate suits: one based upon the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1331 et seq., another based upon the Louisiana law pertaining to wrongful death, LSA–C.C. Art. 2315; and the third based upon the Death on the High Seas Act, 46 U.S.C.A. § 761 et seq. Relying upon *Snipes* and its progeny, this Court dismissed all but the suit

based upon the Death on the High Seas Act, and that suit went on to judgment for the plaintiff in the amount of $75,-000, 266 F.Supp. 1 (E.D.La.1967), and was subsequently affirmed by the United States Court of Appeals for the Fifth Circuit, 395 F.2d 216 (CA 5–1968). Certiorari was granted by the United States Supreme Court, and after hearing, the Court of Appeals and the District Court were reversed. The effect of this reversal was, in the opinion of this Court, to completely reverse also the holding in Pure Oil v. Snipes, supra. The Supreme Court, in *Rodrigue*, said:

> "In light of the principles of tradional admiralty law, the Seas Act [Death on the High Seas Act] and the Lands Act [Outer Continental Shelf Lands Act] we hold that petitioner's remedy is under the Lands Act and Louisiana Law." 89 S.Ct. 1837.

And then, turning to the Outer Continental Shelf Lands Act, the Court said:

> "The purpose of the Lands Act was to define a body of law applicable to the seabed, the subsoil, and the fixed structures such as those in question here on the outer Continental Shelf. That this law was to be federal law of the United States, applying state law only as federal law and then only when not inconsistent with applicable federal law, is made clear by the language of the Act." 89 S.Ct. 1837.

> \* \* \* \* \* \*

> "However, for federal law to oust adopted state law federal law must first apply." 89 S.Ct. 1939.

The Court then proceeded to hold that federal maritime law, and particularly the Death on the High Seas Act, was not applicable federal law in these cases. Referring to fixed offshore drilling platforms, the Court said:

> "They were islands, albeit artificial ones, it was an island, albeit an artificial one, and the accidents had no more connection with the ordinary stuff of admiralty than do accidents on piers. Indeed, the Court has specifically held that drilling platforms

are not within admiralty jurisdiction." 89 S.Ct. 1839–1840.

Thus it was conclusively held in *Rodrigue* that federal maritime law did not apply to accidents occurring on these fixed platforms, and that under the Lands Act, where there is no conflicting federal law applicable, the law of the adjacent state must be applied. In this case, the law of the adjacent state is the law of Louisiana.

But plaintiff contends that the holding in *Rodrigue* is not to be interpreted to mean that the procedural law of the State is also to be applied to the exclusion of federal procedural law. Plaintiff contends that the laws pertaining to the statute of limitations, or under Louisiana law, the law of prescription, and the federal doctrine of laches, are procedural in nature and thus not included in the holding in *Rodrigue*. I cannot agree. If there were some contrary or conflicting federal procedural law involved, then, of course, the state law would have to yield to such applicable federal law. But the Lands Act, when it made state law applicable in the absence of conflicting applicable federal law, did not differentiate between procedural and substantive law. There is here no applicable federal law pertaining to the time within which such a suit for personal injuries or death shall be filed. The doctrine of laches is peculiar to maritime law, and *Rodrigue* teaches that maritime law cannot be applied to this case. There is no other federal law of prescription or limitation of actions applicable to this case. Thus, since plaintiff derives his right or cause of action by virtue of state law, made applicable by the Lands Act, he must also accept the prescriptive period specifically provided by that same state law which creates his right or cause of action. In this case, LSA–C.C. Art. 2315 provides plaintiff's right of action and LSA–C.C. Art. 3536 provides for the prescriptive period of one year within which time his suit must be filed. There being no conflict between this provision of Louisiana law and any applicable provision of fed-

eral law, the one year prescriptive period so provided must be made applicable here.

Finally, plaintiff would have us apply the holding in *Rodrigue* prospectively only so as to exclude from the effect of our ruling here those cases, such as his, that had arisen prior to the Supreme Court decision in *Rodrigue*. The general rule is that new decisions overruling older ones are both retrospective and prospective in operation. Safarik v. Udall, 113 U.S.App.D.C. 68, 304 F.2d 944 (1962.) The Supreme Court may, if it thinks it proper to do so, deviate from the general rule and specifically make its rulings apply prospectively only as it did, for example, in Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969). The failure to do likewise in *Rodrigue*, we believe, means simply that the overruling of *Snipes* was not thought to have produced such inequity and injustice in cases then pending that a departure from the general rule was warranted. We agree. Judgment will be entered accordingly.