**Homer BONNER, Jr., Plaintiff,**

v.

**CHEVRON U.S.A. INC., Defendant.**

**Civ. A. No. E80–0111(N).**

United States District Court, S. D. Mississippi, E. D.

May 6, 1981.

Stephen B. Murray, New Orleans, La., Stanford Young, Waynesboro, Miss., for plaintiff.

Watkins & Eager, John L. Low, IV, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

WALTER L. NIXON, Jr., District Judge.

This is a personal injury action filed under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq. (hereinafter "Lands Act"). In his complaint, plaintiff, Homer Bonner, Jr., alleges he sustained personal injuries on a fixed drilling platform located on the outer continental shelf "offshore of the coast of Louisiana." Bonner further alleges that the defendant, Chevron U.S.A. Inc., owned the platform on which his injuries occurred. The accident in question occurred, according to the allegations of the complaint, on April 2, 1976. Suit was filed in this Court on December 1, 1980.

To complete the factual scenario, it should be noted that the suit has no connection with the State of Mississippi other than the fact that it was filed here. Bonner is a resident of the State of Alabama; Chevron is a California corporation with its principal place of business in San Francisco. As aforesaid, the complaint itself alleges the accident occurred off the coast of Louisiana. Chevron contended, and Bonner did not deny, that plaintiff's single purpose in filing suit in Mississippi was to take advantage of Mississippi's six-year limitations period.

Chevron moved to dismiss the action on the ground that the suit is time barred. According to Chevron, the one-year Louisiana limitations period, § 3536, La.Civ.Code Ann., operates, by virtue of § 1333(a)(2) of the Lands Act, so as to displace the otherwise applicable six-year limitations period prescribed by Mississippi law, § 15–1–49, Miss.Code Ann. (1972).

After studying the briefs and supplemental briefs submitted by the parties, and following oral argument, the Court has concluded Chevron's motion is well taken and should be sustained. The result is harsh; however, the legislative intent is clear. As will be seen hereafter, the Court is of the opinion that, under the facts in this case, the Congress has specified application of the Louisiana limitations period. If it is to be otherwise, it remains within the legislative prerogative of Congress to effectuate a change by way of amendment to the Lands Act.

Because this is a Lands Act case, the Act itself furnishes our point of departure. It provides in pertinent part as follows:

(a)(1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the Outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom . . . .

(2)(A) To the extent that they are applicable . . . the civil and criminal laws of each adjacent state, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the state if its boundaries were extended seaward to the outer margin of the Outer Continental Shelf. . . . 43 U.S.C. § 1333.

Since the complaint itself alleges that the "adjacent state" is Louisiana, it is obvious that Louisiana law governs Bonner's rights against Chevron. However, Louisiana law applies not of its own force and effect, but by virtue of its incorporation and application as "the law of the United States." This Court agrees with Chevron's assertion that Louisiana law thereby becomes federal law, mandating application of the Louisiana prescriptive period rather than the Mississippi limitations period.

The United States Supreme Court considered the question of what limitations period is to be applied in a Lands Act case in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). As in the case at bar, the plaintiff in *Huson* had been injured on the outer continental shelf in waters adjacent to Louisiana. As here, suit in *Huson* was not filed until after the expiration of the one-year Louisiana prescriptive period, but the district court and court of appeals permitted the maintenance of suit on the theory that the admiralty doctrine of laches, rather than the Louisiana prescriptive statute, applied. The Supreme Court reversed on this point, reasoning as follows:

Under § 1333(a)(2) of the Act, "[s]tate law bec[omes] federal law federally enforced." *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 365, 89 S.Ct. 1835, 1842, 23 L.Ed.2d 360, 370. It was the intent of Congress, expressed in the Senate Committee Report, in the Conference Report, and on the floor of the Senate, that state laws be "adopted" or "en-

acted" *as federal law.* See *Id.*, at 357–58, 89 S.Ct. at 1837–38, 23 L.Ed.2d at 365. Thus a federal court applying Louisiana law under § 1333(a)(2) of the Lands Act is applying it as federal law—as the law of the federal forum. Since the federal court is not, then, applying the law of *another* forum in the usual sense, ordinary conflict of laws principles have no relevance. 404 U.S. at 102–03, 92 S.Ct. at 353, 30 L.Ed.2d at 303. [emphasis in original]

There is a footnote appended to the above passage from the Court's opinion in *Huson*, which this Court finds quite instructive. That footnote reads in applicable part as follows:

This is not to imply that a federal court adjudicating a claim under state law as absorbed in the Lands Act must function as it would in a diversity case. 404 U.S. at 102 n. 5, 92 S.Ct. at 353 n.5, 30 L.Ed.2d at 303 n. 5.

From *Huson*, this Court gleans "ordinary conflict of laws principles have no relevance." 404 U.S. at 103, 92 S.Ct. at 353, 30 L.Ed.2d at 303. Accordingly, such cases as *Kershaw v. Sterling Drug, Inc.*, 415 F.2d 1009 (5th Cir. 1969), are inapplicable. And because the Louisiana prescriptive period is "absorbed" so as to become a "federal law federally enforced," the substantive/procedural dichotomy generally relied upon in resolving conflicts questions is also not applicable. Rather, reference is to the Supremacy Clause by virtue of which the now federal one-year limitation period bars maintenance of the present action, notwithstanding the Mississippi six-year limitations period. As is stated in Am.Jur.:

The authority of the United States Government is supreme in its congnizance of all subjects which the Constitution has committed to it. Consequently, there can be no conflict of authority, in the sense here given to the term, between a state and the United States in respect to such a matter, the former always subordinated and the latter paramount. 16 Am.Jur.2d, *Conflict of Laws* § 15 at 36.

While admittedly not directly in point, and, to some extent, dicta, the foregoing comments of the Supreme Court in *Huson* are, in the absence of more pertinent authorities, persuasive. Insofar as the Court and counsel have been able to ascertain, the limitations issue here presented is a question of first impression. The Court, therefore, accords the foregoing language from *Huson* somewhat greater weight than would normally be the case.

The Court's disposition of the motion *sub judice* is supported by the legislative history of the Lands Act as set forth in the seminal Lands Act case, *Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). According to the court in *Rodrigue*:

> The Lands Act makes it clear that federal law, supplemented by state law of the adjacent state, is to be applied to these artificial islands as though they were federal enclaves in an upland state.

> The purpose of the Lands Act was to define a body of law applicable to the seabed, the subsoil, and the fixed structure such as those in question here on the outer continental shelf. That this law was to be federal law of the United States, applying state law only as federal law and then only when not inconsistent with applicable law, is made clear by the language of the Act.

> It is evident from this that federal law is "exclusive" in its regulation of this area, and that state law is adopted only as surrogate federal law. 395 U.S. at 355–57, 89 S.Ct. at 1837–38, 23 L.Ed.2d at 364–65.

■ According to *Rodrigue*, then, the Court should approach this case as though the accident in question occurred on a federal enclave located in Louisiana. That being the case, the only law which the Court can apply is federal law since state laws lack force or effect within federal enclaves. *Paul v. United States*, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963). The states are permitted to regulate what occurs within federal enclaves only to the extent an act of Congress specifically authorizes state regu-

lation. *Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976). By the Lands Act, Congress permitted state law to operate within these offshore "enclaves," but state law is applicable *only* as federal law. As Judge Brown noted in *Continental Oil Co. v. London Steam-ship Owners' Mutual Ins. Ass'n.*, 417 F.2d 1030, 1033–34 (5th Cir. 1969), "federal law and jurisdiction are the sole sources of governmental power in any area subject to the Lands Act." By virtue of the Lands Act, the Louisiana one-year prescriptive period becomes applicable in this Court as federal law.

The plaintiff argues that this case should be considered as if the accident occurred onshore in, rather than offshore of, Louisiana, thus requiring the application of Mississippi's six-year limitation period as in *Kershaw v. Sterling Drug, supra*. But such an approach disregards the Supreme Court's admonishment in *Huson* to the effect that a federal court is not to adjudicate a Lands Act claim in the same fashion as a diversity case. That approach also ignores the Supreme Court's directive in *Rodrigue* to the effect that, under the Lands Act, state law "is to be applied to these artificial islands as though they were federal enclaves in an upland state." In short, if the accident occurred onshore, the Lands Act would have no application. Because the accident occurred offshore, the Lands Act does apply and the Court is precluded from applying the law applicable to an onshore injury. Rather, the Court must apply the law which would be applicable to an onshore injury occurring in a "federal enclave" in Louisiana, which requires application of the Louisiana prescriptive period *as federal law*.

Although the question presented is one of first impression, the Court's conclusion that the applicable limitation period is the one prescribed by the laws of the adjacent state, here Louisiana, is buttressed by a similar result reached by the author in Annotation, *Construction and Application of Section 4 of Outer Continental Shelf Lands Act*, 30 A.L.R.Fed. 535, 568. And the following passage from *Guillory v. Humble Oil &*

*Refining Co.*, 310 F.Supp. 230 (E.D.La.1970), *rev'd on other grounds*, 453 F.2d 886 (5th Cir. 1972), supports application of Louisiana law here:

> [T]he Lands Act, when it made state law applicable in the absence of conflicting applicable federal law, did not differentiate between procedural and substantive law. There is here no applicable federal law pertaining to the time within which a suit for personal injuries or death should be filed.... [S]ince plaintiff derives his right or cause of action by virtue of state law, made applicable by the Lands Act, he must also accept the prescriptive period specifically provided by that same state law which creates his right or cause of action. 310 F.Supp. at 232.

 In sum, this Court is of the opinion that, under the Lands Act, it was the intention of Congress that the limitation period of the state adjacent to the area in which the cause of action accrued be adopted and applied whenever and wherever suit is brought to enforce such cause of action. This limitation period, although originally derived from state law, is applied as federal law. As the Supreme Court said in *Huson*, [by the Lands Act] "Congress specified that a comprehensive body of state law should be applied by the federal courts...." 404 U.S. at 104, 92 S.Ct. at 354, 30 L.Ed.2d at 304. This "comprehensive body" of law includes the Louisiana prescriptive period which, because it is to be applied as federal law under the Lands Act, precludes the maintenance of the present suit.

An Order conforming with the foregoing opinion shall be submitted dismissing the action in accordance with this Court's Local Rules.